IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>            Plaintiff,<br><br>vs.<br><br>MARK SHURTLEFF, Office of the Attorney General for the State of Utah, in his Official Capacity, et al.,<br><br>            Defendants. | ORDER and MEMORANDUM DECISION<br><br><br><br>Case No. 1:08-CV-64 TC |

      This case involves a constitutional challenge to a Utah state statute that has recently taken effect.  The relevant part of that statute requires sex offenders in Utah to provide Utah's sex offender registry with all of their internet identifiers and the websites on which they use those identifiers.  This action was brought by a Utah resident convicted of sex offenses in a United States military court who has sued under the fictitious name of John Doe.  Mr. Doe has completed his sentence for his sex-related crimes and is not on parole or subject to supervised release.  Mr. Doe contends that his right to protected anonymous speech on the internet is diminished by the disclosure requirements of Utah's statute.  He challenges the statute as unconstitutional on its face as applied to him and is seeking summary judgment.

      The court agrees with Mr. Doe.  Although Mr. Doe is a sex offender, he has not forfeited his First Amendment rights, including his right to anonymous online speech.  To justify a restriction of those rights, Utah needs to show that it has a compelling interest and has chosen the least restrictive means to achieve that interest.  While Utah undeniably has a strong interest in

protecting children from internet predators and investigating crime, the statute's disclosure requirements are not crafted in a way to meet those goals while also protecting Mr. Doe's rights. Accordingly, the court GRANTS Mr. Doe's motion for summary judgment.

## BACKGROUND

The court finds the following facts to be undisputed for purposes of this motion.[1]  Mr. Doe is a resident of Utah.  In 2005, Mr. Doe was convicted of sex offenses involving a minor in the United States military court system.  He served 13 months of an 18 month sentence for those crimes and was released.  He was not placed on parole or supervised release after his incarceration.  At no time has Mr. Doe been involved in the Utah state criminal justice system.

As a sex offender in Utah, Mr. Doe is required to register in Utah's sex offender registry (the "Registry") pursuant to Utah Code Ann. § 77-27-21.5 (the "Registry Statute").  (See Utah Code Ann. § 77-27-21.5(9).)  The Registry is administered and maintained by Utah's Department of Corrections (the "UDOC").  Effective July 1, 2008, the Registry Statute requires registrants to provide the following information to the UDOC:

> (i) Internet identifiers and the addresses the offender uses for routing or self-identification in Internet communications or postings; [and]
>
> (j) the name and Internet address of all websites on which the sex offender is registered using an online identifier, including all online identifiers and passwords used to access those websites . . .

Utah Code Ann. § 77-27-21.5(12)(i) & (j).  The Registry Statute also mandates that the UDOC "require that a sex offender provide to the department any password required for use with an online identifier. Passwords provided to the department may not be disclosed to the public."

---

[1]In their opposition to Mr. Doe's motion for summary judgment, certain Defendants argued that many of these facts should not be taken as undisputed because the only evidence for them is Mr. Doe's verified complaint.  Those Defendants, however, have not offered any evidence that calls into doubt Mr. Doe's recitation of the facts.

Utah Code Ann. § 77-27-21.5(2)(c).  (The Registry Statute also requires that registrants give other information, including DNA samples, but Mr. Doe has not challenged those requirements.)

The Registry Statute defines "online identifier" as "any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication.  It does not include date of birth, Social Security number, or PIN number."  Utah Code Ann. § 77-27-21.5(1)(j).[2]  The Registry Statute makes it a felony if a registrant fails to give the UDOC the information.  See Utah Code Ann. § 77-27-21.5(14)(a).

On June 23, 2008, Mr. Doe, acting *pro se*, filed this action.  Mr. Doe named as Defendants Utah's Attorney General in his official capacity, the UDOC's Executive Director in his official capacity, and the prosecutor and sheriff of every county in Utah, in their official capacities.  Mr. Doe alleges that the Registry Statute's required disclosure of his internet identifiers, related websites, and passwords violates the United States Constitution and several constitutional amendments.  Mr. Doe's most persuasive argument is that providing the UDOC with his internet identifiers and related websites violates his First Amendment rights.  Mr. Doe seeks a declaration that the Registry Statute's requirements are unconstitutional as applied to him and an injunction prohibiting Utah from enforcing those requirements against him.

Along with his complaint, Mr. Doe simultaneously moved for a temporary restraining order.  On June 30, 2008, the court held a hearing regarding Mr. Doe's TRO motion.  Mr. Doe was represented by his present counsel at that hearing.  During the hearing, Mr. Doe made an uncontested proffer that on June 27, 2008, he attempted to re-register as a sex offender with the UDOC without providing his internet identifiers, related websites, and passwords.  (The court

---

[2]The term "internet identifier" is not defined, but it appears to be used interchangeably in the Registry Statute with the term "online identifier."  The court reads those two terms in the Registry Statute as having the same meaning.

will refer to internet identifiers and the related websites as "internet information.")  Mr. Doe further proffered that he was told by UDOC personnel that failing to provide that information would likely result in the issuance of a warrant for his arrest.  At the close of the hearing, the court found that Mr. Doe had raised substantial concerns about the constitutionality of the Registry Statute.  Accordingly, the court prohibited the Attorney General and UDOC's Executive Director from requiring Mr. Doe to provide his internet information and passwords as part of registering.  The court further instructed the sheriffs and prosecutors of Salt Lake and Weber Counties not to arrest or prosecute Mr. Doe under the Registry Statute for not providing that information.  (The Defendants subject to the court's injunction shall be referred to hereinafter as the "Defendants.")  The court informed Mr. Doe that he was required to provide all other information to the UDOC required by the Registry Statute.  The court later issued a written order setting out these instructions.  (See Dkt. No. 15, Sealed Order.)

On July 21, 2008, Mr. Doe moved for summary judgment on his claims that the Registry Statute violates the Constitution on its face as applied to him.  Before responding to Mr. Doe's motion, the Defendants stipulated to an injunction ordering them not to enforce the password disclosure requirements of Utah Code Ann. § 77-27-21.5(2)(c) & (12)(j) until June 1, 2009.  Accordingly, at least for the next several months, the Registry Statute requires that sex offenders must give the UDOC their internet identifiers and the websites where they use those identifiers, but not their passwords.

The parties have also filed other motions.  Those are Mr. Doe's Motion to Appoint Counsel (Dkt. No. 4), Mr. Doe's Motion for Service of Process (Dkt. No. 5); Mr. Doe's Motion to Proceed Using a Pseudonym (Dkt. No. 12); Mr. Doe's Motion for a Preliminary Injunction (Dkt. No 10) and the Salt Lake County Prosecutor and Sheriff's Motion to Dismiss (Dkt. No.

27). For the reasons stated below, Mr. Doe's motion for summary judgment (Dkt. No. 19) is GRANTED. Most of the other motions are mooted by this ruling.

**ANALYSIS**

As noted above, the main issue is whether Utah Code Ann. § 77-27-21.5(12)(i) &(j), requiring Mr. Doe to provide his internet information to the UDOC, violates his constitutional rights. Defendants contend that this dispute is not ripe for review.

**I.     Ripeness**

For the purpose of the ripeness inquiry only, Defendants agree that Mr. Doe has the right to speak anonymously online. But even if he has such a right, Defendants assert, Mr. Doe has presented no evidence that the UDOC intends to use Mr. Doe's internet information in a manner that would compromise this right. In support of this proposition, Defendants rely primarily on an affidavit by James Ingle Jr., the head of the UDOC's Registry program. In his affidavit, Mr. Ingle states that while the UDOC will use registrants' internet information to investigate crimes, Mr. Ingle does not interpret the Registry Statute as giving the UDOC authority to monitor registrants' non-criminal online behavior, nor does the UDOC engage in such monitoring. (See Ingle Aff. at ¶ 12.) Mr. Ingle further states that the UDOC does not disseminate registrants' internet information to the public. (See id. at ¶ 13.) At the hearing on Mr. Doe's summary judgment motion, Mr. Ingle proffered that the UDOC would provide any law enforcement entity with registrants' internet information if that entity requested it in relation to a criminal investigation.

Defendants cite New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995), for the proposition that courts assessing ripeness analysis should focus on "whether the case involves uncertain or contingent future events that may not occur as

anticipated, or indeed may not occur at all." Defendants conclude that given the Registry administrator's view of the Registry Statute and the UDOC's present limited use and distribution of registrants' internet information, the possibility that the UDOC will infringe Mr. Doe's protected anonymous speech is remote, making this action not yet ripe for review.

But Defendants' argument is not persuasive. One of Mr. Doe's chief complaints is that the Registry Statute on its face chills his First Amendment right to speak anonymously on the internet. The customary ripeness analysis is "relaxed somewhat in circumstances such as this where a facial challenge, implicating First Amendment values, is brought." Id. In such cases, the Tenth Circuit uses a three-element ripeness inquiry, considering "(1) hardship to the parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review." Id. at 1500. Here, these elements all weigh in favor of a conclusion that the controversy is ripe for review.

First, the hardship to Mr. Doe of withholding review is acute because he has been placed in an "immediate and direct dilemma." Id. That is, Mr. Doe has the choice between (a) turning over his internet information to the UDOC and facing a well-grounded possibility that his protected online speech will not remain anonymous or (b) refusing to provide his internet information to the UDOC and facing a felony prosecution. Notably, Mr. Doe has made a credible and undisputed proffer that UDOC staff threatened him with arrest and prosecution when he tried to register without providing his internet information. Having a party placed in such a dilemma supports a finding of hardship.

Second, Mr. Doe's willingness to engage in protected online anonymous speech will be lessened by having to provide the UDOC with his internet information under the Registry Statute as it is written. The Registry Statute contains no provision that prevents the UDOC from

tracking and linking protected anonymous internet speech to a registrant if the UDOC decides to do so. Nor does the Registry Statute contain any prohibition on the UDOC disseminating registrant's internet information outside the UDOC, raising the real possibility that the information could become public knowledge.[3] Finally, even if the only time that the UDOC provides a registrant's internet information to law enforcement is in response to a request for investigative purposes, there is no limitation on how law enforcement officials may use the information once they have it. Given that there are no restrictions in the Registry Statute on how the UDOC may use or distribute Mr. Doe's internet information, his protected speech is undoubtedly chilled.

Finally, this action involves a facial constitutional challenge to a statute. Consequently, the case is predominated by strictly legal issues. Moreover, the few facts that the court views as relevant to the outcome here have already been established. These considerations weigh in favor of finding this case fit for judicial review at this time. See id. at 1499. Because all three factors weigh in favor of ripeness, the court finds that this action is ripe for review.

**II.     Mr. Doe's First Amendment Right to Anonymous Online Speech**

Mr. Doe's most compelling constitutional argument is that the Registry Statute abridges his First Amendment right to speak anonymously online.[4] Neither the court nor the parties have located any federal or state case squarely addressing the question of whether requiring sex

---

[3] Defendants argue that the Registry Statute does not require the UDOC to make sex offenders' internet information available to the public, which the Defendants view as a prohibition on making such information public. This reading is reasonable, but it is contradicted by Utah Code Ann. § 77-27-21.5(2)(c), which expressly prohibits making passwords available to the public. The bottom line is that there is no provision in the Registry Statute regarding the UDOC's use of the information.

[4] Though Mr. Doe technically should have brought this action under 42 U.S.C. § 1983, the court will liberally construe his complaint, which he filed *pro se*, as having pled such a claim. Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003).

offenders to disclose their internet information to a state registry infringes on First Amendment rights.

The lack of authority on this point of law is not surprising.  The most common challenges to state sex offender registry statutes have been brought on the questions of whether the laws violate due process or are *ex post facto* laws.  See, e.g., Smith v. Doe, 538 U.S. 84 (2003).  Registry statutes, which have been around for many years, generally survive these challenges.  See id.  However, states have only recently started to enact statutes requiring that sex offenders provide registries with the internet information that Utah requires in the Registry Statute.  This trend is no doubt attributable to Congress' passage of the Adam Walsh Child Protection and Safety Act in 2006, Title I of which requires states to maintain registries containing the information enumerated in 42 U.S.C. § 16914 or risk losing federal law enforcement funds.  See 42 U.S.C. ¶ 16913 and 42 U.S.C. § 14071.  42 U.S.C.§ 16914 does not name internet identifiers and related websites as a required piece of information for sex offender registries.  But the United State Department of Justice, which has the responsibility of administering the federal statute, published Proposed Guidelines on May 30, 2007, interpreting 42 U.S.C. § 16914 to require sex offenders to provide "all designations used by sex offenders for purposes of routing or self-identification in Internet communications or postings."  The National Guidelines for Sex Offender Registration and Notification, Proposed Guidelines, 72 Fed. Reg. 30210-01, 30220 (May 30, 2007).  Given the recency of the Walsh Act and the DOJ's proposed guidelines, this action appears to be one of the first challenges to a registry's internet information requirements on First Amendment grounds.

In sum, the court finds itself in wholly untested legal waters.  For guidance, the court has looked to several cases from the Supreme Court, the Tenth Circuit and other jurisdictions which

shed light on the issues involved in this case.

First, it is clear that anonymous speech is a well-established constitutional right. In fact, anonymous political speech is an especially valued right in this nation:

> Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society. The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.

McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995) (citations omitted). See also Talley v. California, 362 U.S. 60, 64 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.").

Likewise, the role of the internet as one of the most important means of communication available to citizens to express protected speech is beyond question:

> This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer. As the District Court found, "the content on the Internet is as diverse as human thought."

Reno v. American Civil Liberties Union, 521 U.S. 844, 870 (1997) (citation omitted). Based in large part on the importance and unique nature of the internet as a virtual "marketplace of ideas," the Reno v. ACLU Court struck down a federal law aimed at preventing the criminals from targeting children with sexually explicit materials over the internet. Id. at 885.

Courts have combined these two concepts to hold that the First Amendment protects anonymous online speech. In American Civil Liberties Union v. Johnson, 4 F. Supp. 2d 1029, 1031 (D.N.M. 1998), the court evaluated the likelihood of success of a constitutional challenge to

a New Mexico statute aimed at protecting children from online sexual solicitation. The court noted that "[r]equiring age verification before providing access to speech on the Internet would bar many people from accessing important information – such as gynecological information – anonymously." Id. at 1032. The court concluded, among other things, that the statute "violates the First and Fourteenth Amendments of the United States Constitution because it prevents people from communicating and accessing information anonymously." Id. at 1033 (citing McIntyre, 514 U.S. at 357 and Talley, 362 U.S. at 65). Applying exacting scrutiny to the statute, the court concluded that there was a substantial likelihood that the statute would be held unconstitutional. See 4 F. Supp. 2d at 1034. The court therefore granted a preliminary injunction barring its enforcement. See id.

The Tenth Circuit affirmed the district court's granting of the injunction in American Civil Liberties Union v. Johnson, 194 F.3d 1149 (10th Cir. 1999). In its decision, the Tenth Circuit noted, but did not specifically address, the district court's ruling that a bar on anonymous internet speech violates the First Amendment. See 194 F.3d at 1155-56 (10th Cir. 1999).

Similarly, in American Civil Liberties Union of Ga. v. Miller, 977 F. Supp. 1228, 1230 (N.D. Ga. 1997), the court reviewed a Georgia statute that made it a crime for individuals to use false names on the internet. A group of plaintiffs sued to enjoin the enforcement of the statute, arguing that it "impos[ed] unconstitutional content-based restrictions on their right to communicate anonymously and pseudonymously over the internet." Id. at 1230. The court agreed with the plaintiffs, reasoning that "the identity of the speaker is no different from other components of [a] document's contents that the author is free to include or exclude." Id. at 1232 (quoting McIntyre, 514 U.S. at 340-42). After subjecting the Georgia statute to exacting scrutiny, the court concluded that the plaintiffs had shown a substantial likelihood that they

would prevail on their claim that the statute violated the First Amendment. See id. at 1234-35.

Internet anonymity has been shielded by courts in other contexts as well. For example, in Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1092, the court reasoned that :

> Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas. The "ability to speak one's mind" on the Internet "without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate." People who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court.

The 2TheMart.com court outlined strict rules for allowing a subpoena that had the effect of unmasking the identity of anonymous online speakers, explaining:

> The Internet is a truly democratic forum for communication. It allows for the free exchange of ideas at an unprecedented speed and scale. For this reason, the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded.

Id. at 1097.

Defendants do not directly challenge the right to anonymous speech online. Instead, they contend that because he is a sex offender, Mr. Doe has relinquished that right. Defendants cite cases in various other contexts that have approved curtailing the constitutional rights of sex offenders and felons. Defendants do not cite any authority, however, supporting the proposition that a sex offender who has completed his prison term and is not on parole or probation gives up First Amendment rights.

A review of various federal cases leads the court to conclude the Mr. Doe has not given up his right to anonymous internet speech because of his status as a sex offender. Two cases in particular stood out in this review. First, the United States Supreme Court has held that even people in custody have First Amendment rights, although restrictions on those rights are scrutinized under a low standard. See Turner v. Safley, 482 U.S. 78, 89-91 (1987) (allowing a

restriction on prisoners' First Amendment rights only "if it is reasonably related to legitimate penological interests"). Second, the Tenth Circuit has ruled that a complete, unconditional ban on internet access as a condition of supervised release is overly broad and impermissible. United States v. White, 244 F.3d 1199, 1206 (10th Cir. 2001).

Notably, the released prisoner who would have been subject to the ban in White was a repeat sex offender who had used the internet to order child pornography. See id. at 1201. In rejecting a condition of release that appeared to completely ban the released prisoner's access to the internet, the court noted several innocent uses that the released prisoner could make of the internet, such as doing research, checking the weather and reading a newspaper. See id. at 1206. The court accordingly reads White as a caution that care must be used in restricting the rights of even of potentially dangerous criminals on supervised release.

The court's conclusion that Mr. Doe retains his right to anonymous online speech is bolstered by the fact that Mr. Doe is not on parole or subject to supervised release. Restrictions on the rights of parolees and those on supervised release are subject to different analysis, which this order does not undertake. See, e.g., United States v. Vinson, 147 Fed. Appx. 763, 774 (10th Cir. 2005) (upholding condition of release prohibiting internet access without probation officer's approval.) As has been made clear throughout this order, the court's analysis is limited to the Registry Statute as applied to Mr. Doe.

Having concluded that Mr. Doe has the right to speak anonymously online, the next question for the court is whether the Registry Statute impermissibly limits that right.[5]

---

[5]Defendants also argue that UDOC will only use registrants' internet information to monitor criminal conduct, and that criminal conduct is not protected by the First Amendment. Criminal conduct is certainly not protected by the First Amendment. But there is nothing in the Registry Statute that prevents the UDOC from using the information to reveal the identity of a registrant who has spoken anonymously online in a non-criminal manner, or to release the

### III. Exacting Scrutiny Analysis

The court believes that the Registry Statute burdens Mr. Doe's right to anonymous online speech. If Mr. Doe provides the UDOC with his internet information and knows that there are no statutory limits on how that information can be used by the UDOC or others, he is less likely to engage in protected anonymous speech online. Of course, finding that the Registry Statute infringes on protected speech does not automatically mean that the statute is unconstitutional.

There are two levels of scrutiny courts apply in analyzing restrictions on protected speech: exacting scrutiny, which is used when the statute is content-based, and intermediate scrutiny, which is applied to content-neutral statutes. See Golan v. Gonzales, 501 F.3d 1179, 1196 (10th Cir. 2007). "Content-based restrictions on speech are those which 'suppress, disadvantage, or impose differential burdens upon speech because of its content.'" Id. (citation omitted). The court believes that the Registry Statute is content-based, as it requires registrants to reveal their true identities to the UDOC with no assurance that their protected online speech will remain anonymous. See ACLU of Ga. v. Miller, 977 F. Supp. at 1232 ("[B]ecause 'the identity of the speaker is no different from other components of [a] document's contents that the author is free to include or exclude,' the statute'' prohibition of internet transmissions which 'falsely identify' the sender constitutes a presumptively invalid content-based restriction.") (citation omitted). Accordingly, the court will apply exacting scrutiny to the Registry Statute. See ACLU v. Johnson, 194 F.3d at 1156 ("The Court made clear in Reno v. ACLU, 521 U.S. at 870. . . that content-based regulation of Internet speech is subject to. . . strict scrutiny.") (footnote omitted).

Under exacting scrutiny, "the government may 'regulate the content of constitutionally

---

information to others who wish to do so.

protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" ACLU v. Johnson, 194 F.3d at 1156 (quoting Sable Commc'ns, Inc. v. Federal Commc'ns Comm'n., 492 U.S. 115, 126 (1989)).  Here, Utah undoubtedly has a compelling interest in protecting children from internet predators and investigating online crimes, which are the stated goals of the Registry Statute.  See, e.g., Sable, 492 U.S. at 126 ("We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors.").  The Registry Statute appears to achieve these ends.  For example, if the UDOC makes sex offenders' internet information immediately available to investigators, investigations into potential crimes originating online could be hastened.  Moreover, knowing that police will have their internet information would probably discourage some sex offenders from using the internet to help them commit crimes.

  The only question, then, is whether the Registry Statute's disclosure requirements are the least restrictive means available to meet these goals.  They are not.  With no restrictions on how the UDOC can use or disseminate registrants' internet information, the Registry Statute implicates protected speech and criminal activity alike.  An alternative statute that contained such restrictions would be similarly effective and less threatening to protected anonymous speech.

  The Defendants argue that court should narrowly construe the Registry Statute as allowing the UDOC to use internet information for criminal investigations only, and as prohibiting dissemination of that information to the public.  In other words, the Defendants maintain that the Registry Statute already contains the restrictions identified by the court, and so it should be found constitutional.

  It is true that "in determining a facial [First Amendment] challenge to a statute, if it be readily susceptible to a narrowing construction that would make it constitutional, it will be

upheld." ACLU v. Johnson, 194 F.3d at 1159 (citation omitted). But if the court is to engage in such a construction, the "key. . . is that the statute must be readily susceptible to the limitation; we will not rewrite a state law to conform it to constitutional requirements." Id. (citation omitted). The court does not view the Registry Statute as readily susceptible to a construction that imposes restrictions on internet information. For example, Defendants point to Utah Code Ann. § 77-27-21.5(2)(b) as a requirement that internet information be kept private. But § 77-27-21.5(2)(b) is an instruction to make certain information public, not a prohibition on making internet information private. Because the court would have to rewrite the Registry Statute to include limitations on how Mr. Doe's internet information will be treated to preserve its constitutionality as applied to him, the Registry Statute is not saved by narrow construction.

The court is mindful of the importance of the Utah legislature's goals in passing the Registry Statute. The court notes, however, that investigators of internet crime already have tools to unmask anonymous internet suspects, such as investigative subpoenas. If Utah wants the additional benefit of having Mr. Doe's internet information available on its Registry strictly for law enforcement purposes, it will not be difficult to amend the Registry Statute to that effect.

Based on the above, the court holds that the Registry Statute on its face violates the First Amendment as applied to Mr. Doe. The Fourteenth Amendment protects Mr. Doe's First Amendment rights from abridgement by Utah statute. Accordingly, the court grants summary judgment in Mr. Doe's favor and enjoins the Defendants from enforcing the disclosure requirements of Utah Code Ann. § 77-27-21.5(12)(i) & (j) against him.

Given this ruling, there is no need to address Mr. Doe's arguments under the Fourth Amendment or the *ex post facto* clause of the Article I, Section 10 of the United States Constitution.

**IV.   Other Outstanding Motions**

While the court has allowed Mr. Doe to proceed under a pseudonym as a practical matter, it has not yet formally ruled on is motion to be allowed to do so. Because of the potential repercussions that Mr. Doe might face based on his bringing of this successful suit, the court grants his motion. All other pending motions are rendered moot by this Order.

### ORDER

For the reasons set forth above, the court ORDERS as follows:

Mr. Doe's Motion to Appoint Counsel (Dkt. No. 4) is DENIED as moot;

Mr. Doe's Motion for Service of Process (Dkt. No. 5) is DENIED as moot;

Mr. Doe's Motion for a Preliminary Injunction (Dkt. No. 10) is DENIED as moot;

Mr. Doe's Motion to Proceed Under Pseudonym (Dkt. No. 12) is GRANTED;

Mr. Doe's Motion for Summary Judgment (Dkt. No. 19) is GRANTED and

the Motion to Dismiss of the Salt Lake County Sheriff and Prosecutor (Dkt. No. 27) is DENIED as moot.

All named Defendants are hereby ENJOINED from enforcing the disclosure requirements of Utah Code Ann. § 77-27-21.5(12)(i) & (j) against Mr. Doe. The enjoined parties should refer to the court's Sealed Order of June 30, 2008 (Dkt. No. 15) to ascertain Mr. Doe's real identity.

SO ORDERED this 25th day of September, 2008.

BY THE COURT

*Tena Campbell*

TENA CAMPBELL
Chief District Judge