IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>vs.<br><br>MARK SHURTLEFF, et al.,<br><br>    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:08-CV-64-TC |

Defendants have filed a motion under Federal Rule of Civil Procedure 60(b) asking this court to vacate its earlier order enjoining enforcement of sections of Utah's sex offender registry statute. Defendants' motion is based on recent amendments to the statute by the Utah Legislature. Because the amendments made by the Legislature address the statute's Constitutional violations, the court vacates its enjoinment of the statute.

**BACKGROUND**

This case is a challenge to portions of Utah's sex offender registry statute (the "Registry Statute"), Utah Code Ann. § 77-27-21.5. The Plaintiff, Mr. Doe, was convicted of sexual offenses in the United States military court system in 2005. He served his sentence and was released without being placed on parole or supervised release.

Utah's Registry Statute requires sex offenders, such as Mr. Doe, to register with the Utah Department of Corrections (UDOC). Effective July 1, 2008, the Registry Statute required registrants to provide the following information to the UDOC:

>(i) Internet identifiers and the addresses the offender uses for routing or self-identification in Internet communications or postings; [and]
>
>(j) the name and Internet address of all websites on which the sex offender is registered using an online identifier, including all online identifiers and passwords used to access those websites . . .

Utah Code Ann. § 77-27-21.5(14)(i) & (j) (2008).  "Internet identifier" is defined as "any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication" and does not include "date of birth, Social Security number, or PIN number." Id. § 77-27-21.5(1)(j) (2009).  The Registry Statute also mandated that UDOC "require that a sex offender provide to the department any password required for use with an online identifier.  Passwords provided to the department may not be disclosed to the public." Id. § 77-27-21.5(2)(c) (2008).

Mr. Doe filed this suit challenging the Registry Statute.  He alleged that the Registry Statute's required disclosure of his Internet identifiers, related websites, and passwords violates the United States Constitution.  In particular, he argued that the requirement violated his First Amendment right to free speech, his Fourth Amendment right to be free of unreasonable searches, and the ex post facto clause.

On September 25, 2008, this court issued an order enjoining enforcement of the Registry Statute against Mr. Doe.  The court concluded that the statute violated Mr. Doe's First Amendment right to anonymous online speech because, although the statute promoted a compelling state interest, its requirements were not the least restrictive means available.  (Docket No. 36.)  The court noted that the Registry Statute contained no restrictions on how the UDOC could use or disseminate registrants' Internet information, implicating protected speech and criminal activity alike.  Because the statute violated the First Amendment, the court did not reach Mr. Doe's ex post facto or Fourth

2

Amendment arguments. In addition, the court granted a stipulated motion of the parties requesting that the court temporarily enjoin the defendants from enforcing the password requirements of the Registry Statute against Mr. Doe, until July 1, 2009. (Docket No. 29.)

On May 12, 2009, amendments to the Registry Statute enacted by the Utah Legislature became effective. The legislature amended both the Registry Statute and the Governmental Records Access and Management Act (GRAMA), Utah Code Ann. § 63G-2-302, which governs privacy of records.

The amendments accomplished two things. First, they removed all requirements for disclosure of passwords and explicitly excluded passwords from the definition of "Internet identifier." Utah Code Ann. § 77-27-21.5 (1)(j) (2009). Second, they limited UDOC's discretion in its use of offenders' internet identifiers. Now UDOC may only use the identifiers to investigate sex-related crimes or to make disclosures permitted by GRAMA. Language added to the Registry Statute provides,

> The department, to assist in investigating sex-related crimes and in apprehending offenders, shall: . . . share information provided by an offender under this section that may not be made available to the public under Subsection (27), but only:
>
> (i) for the purposes under this Subsection (2); or
>
> (ii) in accordance with [GRAMA] Section 63G-2-206.

Utah Code Ann. § 77-27-21.5(2)(c). Subsection (2) provides that to assist in investigating sex-related crimes, UDOC shall "develop and operate a system to collect, analyze, maintain, and disseminate information on offenders and sex and kidnap offenses." Id. § 77-27-21.5(2)(a). Subsection (27) lists the information that must be included on the sex offender notification and registration website. Id. § 77-27-21.5(27). The list does not include Internet identifiers.

GRAMA was amended to designate as "private" any information provided by an offender in compliance with the Registry Statute (with the exception of information the Registry Statute requires be made public). Id. § 63G-2-302(1)(m) (2009). Under GRAMA, private records may only be disclosed in certain limited situations including when requested by the subject of the record, those authorized by the subject to receive the information, or when the information is subject to a court order or legislative subpoena. Id. § 63G-2-202. GRAMA also controls record sharing between governmental entities and requires a receiving entity comply with the same restrictions on disclosures as the originating entity. Id. § 63G-2-206.

After the passage of these amendments, the Defendants filed a motion under Federal Rule of Civil Procedure 60(b), requesting that the court vacate its prior orders as moot.

## ANALYSIS

The Defendants argue that amendments passed by the Utah Legislature moot this challenge and the case should be dismissed. Mr. Doe maintains the changes are not so great as to render the challenge moot and he reasserts his challenges under the First Amendment, Fourth Amendment and ex post facto clause.

I. Mootness

The Defendants argue that the amendments to the Registry Statute render both orders issued in this case moot. Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. An actual case or controversy must be present at all stages of the litigation, not only at the inception of the suit. Kansas Judicial Review v. Stout, 562 F.3d 1240, 1245 (10th Cir. 2009). The critical inquiry in deciding whether a case is moot is "whether granting a present determination of the issues offered will have some effect in the

real world." Id. at 1246.

"Generally, repeal of a challenged statute causes a case to become moot because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any remedial action by the court ineffectual." Id. But, "[w]here a new statute is sufficiently similar to the repealed statute that it is permissible to say that the challenged conduct continues, the controversy is not mooted by the change, and a federal court continues to have jurisdiction." Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotation and alteration omitted). To determine whether the amendments moot this challenge, this court must compare the versions of the statute to determine whether the changes are "too numerous and too fundamental to preserve . . . jurisdiction." Id.

The requirement that offenders provide their Internet passwords to the UDOC was stricken from the Registry Statute by the amendments. Accordingly, there is no case or controversy concerning this provision and the challenge is moot. The court's order staying the enforcement of this provision is likewise moot.

In contrast, the requirements concerning disclosure of Internet identifiers remain in place. While the amendments made meaningful changes to the restrictions on UDOC's use of the information, Mr. Doe's challenge went beyond these concerns. In particular, he argues that the Registry Statute violates the Fourth Amendment and ex post facto clause of the Constitution. These challenges are unaffected by the amendments and are not moot.

In addition, although Mr. Doe's First Amendment challenge included arguments based on the lack of controls on the information, he also argued that the required disclosure itself violated his First Amendment rights. The changes to the Registry Statute, while giving the court good cause to

reconsider its earlier order, are not so numerous and fundamental as to render Mr. Doe's First Amendment challenge moot. See Citizens for Responsible Gov't, 236 F.3d at 1182. In particular, in considering "whether granting a present determination of the issues offered will have some effect in the real world," it is clear that the relief requested by Mr. Doe (enjoining the enforcement of the Registry Statute provisions requiring him to disclose his Internet identifiers) will have a real effect.

II. First Amendment Challenge

The court applied exacting scrutiny to the 2008 Registry Statute. (Docket No. 36 at 13.) Under exacting scrutiny, "the government may 'regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" ACLU v. Johnson, 194 F.3d 1149, 1156 (10th Cir. 1999) (quoting Sable Commc'ns, Inc. v. Fed. Commc'ns Comm'n, 492 U.S. 115, 126 (1989)). In the court's previous order, the court found that the Registry Statute achieves the compelling interest in protecting children from Internet predators and investigating online crimes, but concluded it was not the least restrictive means available because it did not restrict the use of the information to the investigation of sex-related crimes. (Docket No. 36 at 14.)

"When a law burdens core political speech, [courts] apply 'exacting scrutiny,' and . . . uphold the restriction only if it is narrowly tailored to serve an overriding state interest." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347 (1995); Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1099 (10th Cir. 2006) ("Laws that restrict core political speech . . . are subject to 'exacting scrutiny.'"). The 2008 Registry Statute would have permitted monitoring of any speech, including core political speech. See Initiative & Referendum Inst., 450 F.3d at 1099 (defining "core political speech" as "interactive communication concerning political change"). The intrusion into Mr. Doe's

6

ability to engage in anonymous core political speech lead the court to apply exacting scrutiny.[1] See McIntyre, 514 U.S. at 347.

"The First Amendment affords the broadest protection to such political expression in order to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Id. at 346 (quotations and citations omitted). Not all speech is entitled to such strong protections. R.A.V. v. City of St. Paul, 505 U.S. 377, 422 (1992) (Stevens, J., concurring) ("Our First Amendment decisions have created a rough hierarchy in the constitutional protection of speech. Core political speech occupies the highest, most protected position . . . ."). Courts have broadly agreed that the protection afforded to anonymous Internet users must be related to the importance of the type of speech. See, e.g., Doe I v. Individuals, 561 F. Supp. 2d 249, 254 (D. Conn. 2008) ("However, the right to speak anonymously, on the Internet or otherwise, is not absolute and does not protect speech that otherwise would be unprotected."); Freedman v. Am. Online, Inc., 412 F. Supp. 2d 174, 184 (D. Conn. 2005) ("Although anonymous speech is entitled to First Amendment protection, threatening communications are not."); Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2004) ("Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amendment, for example, does not protect copyright infringement.").

Because the Registry Statute no longer burdens core political speech, it does not infringe upon that "highest, most protected position." R.A.V., 505 U.S. at 422 (Stevens, J., concurring). Consequently, the court need not apply exacting scrutiny in examining the statute. As the Fourth

---

[1] See Docket No. 36 at 7-12.

Circuit has explained:

> The First Amendment protects anonymous speech in order to prevent the government from suppressing expression through compelled public identification. Forced public revelation discourages proponents of controversial viewpoints from speaking by exposing them to harassment or retaliation for the content of their speech. Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression. In other words, <u>the First Amendment protects anonymity where it serves as a catalyst for speech</u>.

<u>Peterson v. Nat'l Telecomm. & Info. Admin.</u>, 478 F.3d 626, 632 (4th Cir. 2007) (citations omitted and emphasis added).

Following the 2009 amendments, the anonymity of those registered under the Registry Statute can only be lifted to investigate an Internet sex crime. Because of the restrictions on the use of the information, the chilling effect on speech is necessarily diminished. It is no longer the case that the anonymity that Mr. Doe relies on as a catalyst for his protected online speech is significantly threatened by the Registry Statute. Accordingly, the Registry Statute now complies with the requirements of the First Amendment. <u>See id.</u> ("Because anonymity did not serve as a catalyst for Appellant's expression, the [Appellee's] disclosure requirement was no threat to his speech activities and did not cause him injury.").

III. <u>Fourth Amendment</u>

Mr. Doe also argues that the Registry Statute's requirement that he divulge his Internet information violates his Fourth Amendment right to be free from unreasonable searches and seizures. To establish a violation of the Fourth Amendment, a plaintiff must show that he has a reasonable expectation of privacy in the information to be divulged. <u>U.S. v. Angevine</u>, 281 F.3d 1130, 1134 (10th Cir. 2002). An individual has no reasonable expectation of privacy in subscriber information provided to an Internet provider. <u>United States v. Perrine</u>, 518 F.3d 1196, 1204 (10th Cir. 2008).

In Perrine, for example, when law enforcement obtained records from Yahoo! linking a screen name to an IP address registered to the defendant, the Tenth Circuit held that the Fourth Amendment was not implicated because the defendant had no expectation of privacy in information he had voluntarily transmitted to a third-party Internet provider. Id. at 1199, 1204.

Presumably, Mr. Doe accesses the Internet through an IP address that is linked to his subscriber information, which would include his identity. He would have no reasonable expectation of privacy in those user names. The party asserting the protection of the Fourth Amendment bears the burden of demonstrating that he has a reasonable expectation of privacy in the area to be searched. Angevine, 281 F.3d at 1134. Although Mr. Doe alleges that he carefully guards his online identity, there are no facts here from which the court can conclude that those identities are shielded from Mr. Doe's Internet service provider and, accordingly, Mr. Doe has not met his burden.

IV. Ex Post Facto

Finally, Mr. Doe argues that the Registry Statute violates the ex post facto clause of the Constitution. For a criminal law to be ex post facto it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29 (1981) (footnote and quotation omitted). In determining whether a sex offender registry statute is ex post facto, the court must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." Smith v. Doe, 538 U.S. 84, 92 (2003). If the intent of the legislature in passing the statute was punitive, the statute is ex post facto. But, if the intent was a nonpunitive and civil regulatory scheme, the statute is only ex post facto if it "is so punitive either in purpose or effect as to negate the State's intention to deem it civil." Id. (quotation and alteration omitted). The court's review of the legislature's intent is deferential and "only the clearest proof will suffice to override

legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (quotation omitted).

Prior to the enactment of any Internet identifier disclosure requirements, Utah's Registry Statute was challenged under the ex post facto clause. Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000). The Tenth Circuit held that the Utah legislature intended to establish a civil remedy when it passed the Registry Statute. Id. at 1249.

In reaching its holding, the court applied the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), which are:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

Femedeer, 227 F.3d at 1249 (quotations omitted).

The analysis in Femedeer still applies to the Registry Statute. In Femedeer, the Tenth Circuit concluded that because the Registry statute did "not by itself prohibit sex offenders from pursuing any vocation or avocation available to other members of the public," it did not constitute an affirmative disability or restraint. 227 F.3d at 1250. Likewise, the new provisions at issue here do not create an affirmative disability. Nor can the requirement to notify law enforcement of Internet identifiers historically regarded as punishment. This type of requirement is similar to the maintenance of any public record and not an activity that is punitive in purpose of effect. See id. As for the third factor, the Femedeer court examined the Registry Statute and determined that the notification requirements do not come into play only on a finding of scienter. Id. at 1251-52. The

changes to the Registry Statute concerning Internet identifiers did not affect when the statute is triggered. Accordingly, this factor remains unaltered.

The Femedeer court found that the fourth factor, that is whether the provision promotes traditional aims of punishment, cut both ways. Id. at 1252. The court held that the Registry Statute may deter individuals from committing sex crimes. Id. But a statute that serves the criminal goal of deterrence may also serve civil goals, such as investigation of crimes. See id. The additional requirement of divulging Internet identifiers may increase the deterrence effect, but it also provides an additional investigative tool. Accordingly, this factor remains neutral.

"Where behavior triggering the sanction is itself a crime, we are more likely to infer that the sanction is itself criminal in nature." Id. This fifth factor, as in Femedeer, seems to point toward a finding that the Registry Statute is criminal. But, also as in Femedeer, because "Utah has sought to use the sex offender registry to aid in the civil purpose of prevention and investigation of future sex crimes . . . [the court] accord[s] only limited weight to this factor in light of the equally strong connection between notification and legitimate civil purposes." Id. at 1252-53.

The sixth factor requires the court to consider "whether the 'good purpose' is rationally connected to the consequences." Id. at 1253. Here, the question is whether "the legitimate civil goals of deterrence, avoidance, and investigation are rationally connected" to the Registry Statute's requirement of divulging Internet identifiers. Id. The state must only show a rational connection. Here, there is a rational relationship between the disclosure of Internet identifiers, which may be used to investigate sex crimes and deter offenders from using the Internet to commit such crimes, and the Registry Statute's stated purpose to "assist in the investigation of sex-related crimes and in apprehending offenders." Utah Code Ann. § 77-27-21.5(2).

Finally, the court must consider whether "the sanction appears excessive in relation to the alternative purpose assigned." Femedeer, 227 F.3d at 1253. The Femedeer court concluded, "[i]n the present case, the 'alternative purpose assigned' is to aid in the prevention, avoidance, and investigation of future sex offenses. In light of the substantial interests at stake, we do not think that Internet notification imposes excessive costs." Id. Although requiring disclosure of the Internet identifiers places an additional burden on offenders, it is not so great as to make the Registry Statute excessive.

Accordingly, as in Femedeer, only the fifth factor suggests that the Registry Statute constitutes criminal punishment. Based on this analysis, Mr. Doe has not shown the "clearest proof" of punitive intent necessary to overcome the Utah legislature's stated civil intent. See Smith, 538 U.S. at 92. The Internet identifier requirements of the Registry Statute do not violate the ex post facto clause of the Constitution.

## ORDER

For the foregoing reasons, the Defendants' motion to vacate the orders enjoining enforcement of the statute (Docket No. 50) is GRANTED.

DATED this 20th day of August, 2009.

> BY THE COURT:
>
> *Tena Campbell*
>
> TENA CAMPBELL
> Chief Judge